UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:05CV-124-R

TOMMY MILLER and
VERSIE MILLER                                                                                          PLAINTIFFS

v.

OCCIDENTAL CHEMICAL CORPORATION, et al.,                                        DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on motion to remand (Dkt. # 10) of Plaintiffs Tommy Miler and Versie Miller ("Miller").  Defendant Plastics Engineering Company ("Plastics Engineering") responded (Dkt. # 18) (joined by Durez Corporation ("Durez") and Occidental Chemical Corporation ("Occidental"), Dkt. # 23), as did Defendant Cytec Fiberite, Inc. ("Cytec") (Dkt. # 22).  Plaintiffs replied (Dkt. #9).  This matter is now ripe for adjudication.  For the reasons that follow, the Court **DENIES** Plaintiffs' motion to remand.

**BACKGROUND**

Miller filed this action for judgment in Warren Circuit Court, Bowling Green, Kentucky, seeking judgment against Defendants Occidental, Cytec, Plastics Engineering, Durez, Union Carbide Corporation, General Electric Company, and Eaton Corporation (the "Asbestos Product Defendants") as well as Cutler-Hammer, Inc. ("Cutler-Hammer") and the City of Bowling Green (along with Eaton Corporation, called the "Property Owner Defendants"),  for injury allegedly arising out of his employment in a plant constructed with asbestos.  In the complaint, Plaintiffs alleged:

1

> i. products liability as to the Asbestos Product Defendants;
> ii. ordinary negligence as to the Asbestos Product Defendants;
> iii. breach of implied warranty as to the Asbestos Product Defendants;
> iv. misrepresentation as to the Asbestos Product Defendants;
> vii. negligence as to the Property Owner Defendants;
> viii. breach of implied warranty as to the Property Owner Defendants;
> ix. punitive damages as to all Defendants; and
> x. loss of consortium as to all Defendants.

*See* Plaintiffs' Complaint at ¶ VI-XII (Attachment #1 to Notice of Removal, Dkt. # 1.) Plaintiffs' complaint was filed on July 13, 2005 and on August 19, 2005, Durez filed a Notice of Removal in this court. That Notice of Removal was accompanied by a written consent to removal on behalf of Occidental. On August 22, 2005, Cutler-Hammer, General Electric Company, Cytec, Eaton, Plastics Engineering, and Union Carbide Corporation each filed separate notices of consent to removal. Since then, both General Electric Company and Union Carbide Corporation have been dismissed from the case pursuant to settlement agreements. (Dkt. Nos. 15 and 26.) The remaining defendants, then, are: Occidental, Cutler-Hammer, Cytec, Eaton, Plastics Engineering, and the City of Bowling Green. No notice of consent to removal has been filed by the City of Bowling Green.

Durez based its 28 U.S.C. §1441 removal on this court's diversity jurisdiction, granted in 28 U.S.C. §1332, because, it argues, the City of Bowling Green was fraudulently joined by Plaintiffs and therefore should not be included in the diversity analysis. For their motion to remand, Plaintiffs argue that (1) the removal was procedurally defective because the defendants failed to satisfy the rule of unanimity; and (2) the City of Bowling Green was not fraudulently joined and therefore defeats diversity.

## ANALYSIS

*Rule of Unanimity*

Plaintiffs argue that Defendants' attempt to remove is procedurally defective because of the six defendants who filed their consents to removal separately from the initial notice of removal filed by Durez. "The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999). The *Brierly* court also held that "a later-served defendant has 30 days *from the date of service* to remove a case to federal district court, with the consent of the remaining defendants." *Id.* at 533 (emphasis supplied). Therefore, the notice of removal need not have been filed by Durez (who was served on July 21, 2005) until Monday, August 22, 2005.[1] The six defendants who filed their notice of consent separately, then, all filed them within the time period allowed for the removal. Plaintiffs' argument, then, is essentially that the Federal Rules of Civil Procedure did not permit the defendants to file their notices of consent separately from the notice of removal filed by Durez. Sixth Circuit law, however, does not support this construction of the rules. In *Loftis v. United Parcel Service, Inc.*, for example, the Sixth Circuit, in its explicit adoption of the rule of unanimity described in *Brierly*, described two alternative procedures for satisfying that rule: "...all defendants in the action must join in the removal petition *or* file their consent to removal in writing..." 342 F.3d 509, 516 (6th Cir. 2003). The procedure followed by the defendants in this case, then, was proper even though one defendant availed itself of the opportunity to join in the removal petition and the others chose instead to file a separate consent to removal.

---

[1] August 20, 2005, the thirtieth day after Durez was served, fell on a Saturday; therefore, the deadline for removal was "the end of the next day which is not" a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a). In this case, that day was Monday, August 22.

*Fraudulent Joinder*

Defendants argue that Plaintiffs' joinder of the City of Bowling Green, which would defeat diversity, is fraudulent because there is no colorable basis for a claim against the City of Bowling Green. In determining whether the joinder of the City of Bowling Green was fraudulent "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)) (internal quotation marks omitted). In order to answer that question, the Court must examine the nature of the Plaintiffs' claim against the non-diverse party; here, the City of Bowling Green. Plaintiffs' complaint includes claims against the City of Bowling Green (as part of the group of "Property Owner Defendants") "arising from the City of Bowling Green's ownership of the property, construction of the Cutler-Hammer plant, and installation and ownership of the manufacturing and ventilation equipment at the plant." (Plaintiff's Reply to Response to Motion to Remand, Dkt. # 25, at 2-3). Plaintiffs have not provided any details as to what they allege the legal relationship between the City of Bowling Green and Mr. Miller's employer, Cutler-Hammer, to have been. However, Defendants have filed, and the Court takes judicial notice of, a state court case, *Hunton v. Ford Motor Co.*, which is also asbestos-related and which interprets the lease agreement between the City of Bowling Green and Cutler-Hammer. Civil Action No. 02-CI-01373, Warren Circuit Court, Division 2, June 13, 2005 (Attachment # 2 to Defendants' Response to Motion to Remand, Dkt. # 18). The City of Bowling Green, as part of a post-World War II economic reconstruction plan, issued a number of industrial revenue bonds in order to promote the economic development of the area.

4

As part of that program, the City contracted with Cutler-Hammer to build to Cutler-Hammer's specifications a factory which the City would then lease to Cutler-Hammer. The industrial revenue bonds were also used to purchase some of the machines used in the Cutler-Hammer factory; it appears from the record of the state court below that machines purchased with such bond money were labeled with the name of the City of Bowling Green so that Cutler-Hammer could keep track of which machines were so purchased.

The Warren Circuit Court held, and the Court agrees, that the legal relationship created by the series of agreements that implemented this plan cannot give rise to liability on the part of the City of Bowing Green under Kentucky tort law, specifically *Lambert v. Franklin Real Estate Co.*, 37 S.W.3d 770 (Ky. App. 2000). In that case, the Kentucky Court of Appeals summarized Kentucky's law on the subject as follows:

> A landlord has a duty to disclose a known defective condition which is unknown to the tenant and not discoverable through reasonable inspection. However, it has been a longstanding rule in Kentucky that a tenant takes the premises as he finds them. The landlord need not exercise even ordinary care to furnish reasonably safe premises, and he is not generally liable for injuries caused by defects therein. The landlord is under no implied obligation to repair the demised premises in the absence of a contract to that effect, nor is he responsible to a tenant for injuries to persons or property caused by defects therein, where there has been no reservation on the part of the landlord of any portion of the rented premises. In such cases the law applies to the contract or lease the doctrine of caveat emptor. Where the tenant is put in complete and unrestricted possession and control of the premises, ... the landlord is liable only for the failure to disclose known latent defects at the time the tenant leases the premises. The duties and liabilities of a landlord to persons on the leased premises by the consent of the tenant are the same as those owed to the tenant himself. For this purpose they stand in his shoes. This rule applies to the tenant's wife or child. Where the tenant has no redress against the landlord, those on the premises in the tenant's right are likewise barred.

*Id.* at 775-76 (internal quotation marks and citations omitted). The Warren Circuit Court said "[i]t is difficult for the Court to imagine another situation where the landlord so clearly relinquished complete and total possession of the premises while merely maintaining

ownership." Although the Millers were not party to the *Hunton* case, it is likewise difficult to imagine how the contractual relationship between the City of Bowling Green and Cutler-Hammer would be any different *vis a vis* the Millers than it was the Huntons. Although Plaintiffs suggest that "the facts in this case may prove to be different from those [in] *Hunton*," which they undoubtedly will be, Plaintiffs do not suggest any differences which would be significant in determining the liability of the City of Bowling Green. The only difference mentioned by Plaintiffs is that "Mr. Miller worked directly with machinery owned by the City of Bowling Green that resulted in his exposure to asbestos." (Plaintiffs' Motion to Remand, Dkt. # 10, at 7). However, a review of the documents in the *Hunton* case filed by Defendants reveals that the machines in the Cutler-Hammer plant labeled with the name of the City of Bowling Green were not in fact owned by the city; rather, the label was used to indicate to Cutler-Hammer that the machines were purchased with funds from the bond as part of Cutler-Hammer's internal inventory procedures. Even assuming that Plaintiffs demonstrated that Mr. Miller's work with the machines did have some impact on his asbestos exposure, this fact would not change the City of Bowling Green's legal relationship to Cutler-Hammer (and, therefore, to Mr. Miller) under the standards summarized in *Lambert*. Therefore, the City of Bowling Green was fraudulently joined under the *Alexander* standard and the motion to remand must be denied.

## CONCLUSION

For these reasons, the Court concludes that Defendant's removal was timely filed and the City of Bowling Green was fraudulently joined; therefore, Plaintiff's Motion to Remand should be **DENIED**. Also, the City of Bowling Green should be **DISMISSED**.

An appropriate order shall issue.